# EXHIBIT "1"

STATE OF NEVADA



DEPARTMENT OF BUSINESS AND INDUSTRY

FINANCIAL INSTITUTIONS DIVISION

In Re: )
)
Quality Loan Service Corporation, )     FINDINGS OF FACT, CONCLUSIONS
) OF LAW AND FINAL DECISION
    Respondent. )
)
_____ )

The above-captioned matter was presented to the undersigned, George E. Burns, Commissioner, Financial Institutions Division, State of Nevada (hereinafter "Commissioner") for hearing. The hearing convened at approximately 10:00 a.m. on December 13, 2010.

The Financial Institutions Division, State of Nevada (hereinafter "Division") was represented by Daniel D. Ebihara, Deputy Attorney General. On behalf of the Division, Mr. Ebihara submitted a prehearing statement, a Supplemental Prehearing Statement and Exhibits A – O. Exhibits A – O were all entered into evidence. Sandra Mincer, Acting Deputy Commissioner of the Division, Randolph Barton and Geoffrey Lynn Giles, Esq. appeared and testified on behalf of the Division. Quality Loan Service Corporation (hereinafter "Respondent") was represented by Paul E. Larsen, Esq. of Lionel, Sawyer & Collins and Kristen Schuler-Hintz, Esq., Thomas J. Holthus, Esq. and Kevin McCarthy, Esq. all of McCarthy & Holthus, LLP. David Owen appeared and testified on behalf of Respondent. Respondent submitted a Request for Expedited Hearing, a Prehearing Statement and Exhibits 1 – 19 (including Rule 16.1 Disclosures from Second Judicial District Court Case #CV-09-1845). Exhibit 14 was omitted because it was duplicative. Exhibits 8 - 9 and 12 - 19 were

-1-

1   entered into evidence[1].   Though Exhibits 1 – 7 and 10 - 11 are court decisions and not
2   evidence, the parties agreed that they would be marked as exhibits with the understanding
3   that they are courtesy copies for the Hearing Officer.   Finally, Donna M. Osborn, Esq., of
4   Wright, Finlay & Zak, LLP, representing the United Trustee Association, observed the hearing.
5
6
7                                        JURISDICTION
8        1.      The business of collecting claims for others or of soliciting the right to collect or
    receive payment for another of any claim in the State of Nevada is governed by Chapter 649
9   of the Nevada Revised Statutes (hereinafter "NRS") and Chapter 649 of the Nevada
10  Administrative Code (hereinafter "NAC").   The Division has primary jurisdiction for the
11  licensing and regulation of persons operating and/or engaging in collection services.   NRS
12  649.026.
13       2.      Pursuant to Chapter 649 of the NRS and Chapter 233B of the NRS, this matter
14  is properly before the Commissioner.
15       3.      Pursuant to the authority vested by Chapter 649 of the NRS, the Commissioner
16  hereby makes the following Findings of Fact, Conclusions of Law, and Decision.
17
18
19                                     FINDINGS OF FACT
20       1. Respondent uses the following business address: Quality Loan Service Corp., 2141
21  5th Avenue, San Diego, CA  92101.   *Exhibit F; Exhibit G; Exhibit J.*
22
23       2. On or about June 18, 2010, a complaint was submitted to the Division regarding
    Respondent.
24
25       3. Respondent is not licensed by the Division as a collection agency.
26
27  [1] Exhibit 15 was also provided in a redacted version and the redacted version will be retained by the Division as
    the official record. Should this matter become a District Court case, the redacted version of Exhibit 15 will be the
28  Exhibit 15 in the record filed by the Division.

4. Respondent claims it is not required to be licensed by the Division as a collection agency.

5. Respondent is not acting as a "community manager." *See* NRS 116.023 (defining "community manager" as "a person who provides for or otherwise engages in the management of a common-interest community or the management of an association of a condominium hotel").

6. Respondent is the replacement trustee regarding a deed of trust or is an agent of the trustee or beneficiary. *Exhibit F*, p. 31 (stating that Respondent is "either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust).

7. In this case, Respondent was acting on behalf of a lender.

8. According to *Exhibit F*, upon default, the lender, i.e. beneficiary, declares all sums secured by the deed of trust due and payable and elects to have the trust property sold to satisfy the defaulted loan.

9. The lender also declares that the loan is in default in the referrals that they send to Respondent. Tr. 12/13/10, p. 124, ln. 25 to p. 125, ln. 1.

10. The borrowers know that, unless they can remit the payoff amount, the property will be sold to satisfy the debt. *Exhibit F*.

11. Respondent initially solicits and obtains the opportunity to act as trustee or agent of the beneficiary or trustee with regard to the deed of trust and does so with regard to properties located in the State of Nevada and owned by Nevada residents. *Exhibit F*.

12. The facts also show that Respondent solicits and obtains the right to solicit and obtain payments/payoff amounts on behalf of lenders. *See Exhibits L, M & N*.

13. A notice issued by Respondent, dated September 1, 2009, states, "THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." *Exhibit L*.

-3-

14.   The notice also provides a payoff amount and states, "Please submit your cashier's check, payable to Quality Loan Service Corp., directly to this office. Attn: Accounting / Disbursement Dept.[,] Quality Loan Service Corp.[,] 2141 5th Ave., San Diego, CA 92101." *Exhibit L.*

15. The Debt Validation Notice issued by Respondent states, "WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE." *Exhibit M.*

16. Respondent issued Wire Instructions containing instructions for defaulting borrowers with regard to making payment to Respondent via wire funds transfer. *Exhibit N.*

17. When being questioned about what Respondent does with money received from borrowers who are being foreclosed upon, Mr. David Owen stated, "We send the entire amount received, if received by our office, to the lender." Tr. 12/13/10, p. 119, ln. 6-7.

18. Testimony also established that when a property is sold at auction, the successful bidder pays the full amount of the sale price at the time of the sale and the money goes to Respondent and from Respondent to the lender. Tr. 12/13/10, p. 129, ln. 4 – 13.

19. NRS 107.030(7) states, in pertinent part:

> That the trustee, upon such sale, shall make (without warranty), execute and, <u>after due payment made</u>, deliver to purchaser or purchasers, his, her or their heirs or assigns, a deed or deeds of the premises so sold which shall convey to the purchaser all the title of the grantor in the trust premises, <u>and shall apply the proceeds of the sale thereof in payment</u>, firstly, of the expenses of such sale . . . <u>and in payment, secondly, of the obligation or debts secured</u>, and interest thereon then remaining unpaid, and the amount of all other moneys with interest thereon herein agreed or provided to be paid by grantor; and the balance or surplus of such proceeds of sale it shall pay to grantor, his or her heirs, executors, administrators or assigns.

20. The defaulted loan is an obligation for the payment of money or its equivalent that is past due. NRS 649.010; *see also Memmott v. Onewest Bank, FSB*, Slip Copy, 2011 WL

-4-

1560985, p. 11 (D. Or.) (concluding that the loans remained debts even after the lender elected to pursue non-judicial foreclosure).

21. Respondent solicits the right to solicit and obtain payments on behalf of others and solicits and obtains payments. *Exhibits F, G, L, M & N; Tr.* 12/13/10, p. 119 ("We send the entire amount received, if received by our office, to the lender.").

22. The documentary evidence showing that payments are to be sent to Respondent and Mr. Owen's testimony that Respondent receives payments support that Respondent was soliciting and obtaining payments on behalf of others and outweighs any evidence offered to show the contrary. *Exhibits F, G, L, M & N; Tr.* 12/13/10, p. 119 ("We send the entire amount received, if received by our office, to the lender.").

23. Whether the payment is received by Respondent before or after a foreclosure sale, Respondent is collecting, soliciting or obtaining the payment of a claim owed or due or asserted to be owed or due to another, i.e. collecting debts. *See Memmott v. Onewest Bank, FSB,* Slip Copy, 2011 WL 1560985, p. 11 (D. Or.) (concluding that the loans remained debts even after the lender elected to pursue non-judicial foreclosure).

24. Because the substantial evidence in this case establishes that Respondent is collecting claims for others, the debt collection notices referenced in paragraphs 12 and 14 were of less consideration.

25. Any Finding of Fact hereinafter construed to constitute a Conclusion of Law is hereby adopted as such to the same extent as if originally so denominated.

## CONCLUSIONS OF LAW

1. Pursuant to NRS 649.020(1), "[c]ollection agency" is defined as "all persons engaging, directly or indirectly, and as a primary or a secondary object, business or pursuit, in the collection of or in soliciting or obtaining in any manner the payment of a claim owed or due or asserted to be owed or due to another."

2. Pursuant to NRS 649.010, "[c]laim" is defined as "any obligation for the payment of money or its equivalent that is past due."

3. Upon issuance of the Notice of Breach and Default and of the Election to Cause Sale of Real Property, the lender declares that there are amounts past due, declares the loan in default and declares all amounts secured by the real property due and payable. *Exhibit F.* The lenders also declare the loans to be in default in the referrals that they send to Respondent. Tr. 12/13/10, p. 124, ln. 25 to p. 125, ln. 1. Consequently, all amounts secured by the real property constitute a claim. NRS 649.010.

4. Pursuant to NRS 107.020, transfers in trust are made "to secure the performance of an obligation or the payment of any debt."

5. Pursuant to NRS 107.025, "foreclosure may be had by the exercise of a power of sale in accordance with the provisions of this chapter."

6. "Trustee" is defined as "[o]ne who holds legal title to property 'in trust' for the benefit of another person (beneficiary) and who must carry out specific duties with regard to the property. The trustee owes a fiduciary duty to the beneficiary." Black's Law Dictionary, 1514 (6th Ed. 1990) (citation omitted).

7. "Deed of Trust" is defined as "[a]n instrument in use in some states, taking the place and serving the uses of a mortgage, by which the legal title to real property is placed in one or more trustees, to secure the repayment of a sum of money or the performance of other conditions. Though differing in form from a mortgage, it is essentially a security." Black's Law Dictionary, 414 (6th Ed. 1990) (citation omitted).

8. The term "security" is "usually applied to an obligation, pledge, mortgage, deposit, lien, etc., given by a debtor in order to assure the payment or performance of his debt, by furnishing the creditor with a resource to be used in case of failure in the principal obligation. Collateral given by a debtor to secure a loan." Black's Law Dictionary, 1355 (6th Ed. 1990).

9. The term "loan" includes, "the creation of debt by the lender's payment of or agreement to pay money to the debtor or to a third party for the account of the debtor . . .." Black's Law Dictionary, 936 (6th Ed. 1990).

10. "Payment" means "[a] discharge in money or its equivalent of an obligation or debt owing by one person to another, and is made by debtor's delivery to creditor of money or some other valuable thing, and creditor's receipt thereof, for purpose of extinguishing a debt." Black's Law Dictionary, 1129 (6th Ed. 1990) (citation omitted). In this case, the borrowers' real property is pledged as payment of the amounts owed to the lenders in the event of default. *Id.* Though the borrowers are not delivering the property to the lenders directly, because non-judicial foreclosure is required to terminate the right of redemption and facilitate the sale, pursuant to the deed of trust and NRS 107.080(1) the lender has the right to receive payment for the debt via a foreclosure sale, i.e. the borrower has agreed that the debt can be paid through such means. *Id.*; *see* NRS 107.080 (allowing payment to be made up to five days before the sale); *see* NRS 107.030(7) (indicating that the trustee will apply the proceeds in payment of secured debts). When Respondent obtains payments, in any manner, from borrowers for debts owed to others it is acting as a collection agency. NRS 649.020(1).

11. "Solicit" means, "to try to obtain." Black's Law Dictionary, 1392 (6th Ed. 1990).

12. "Obtain" means, "to acquire, in any way." Black's Law Dictionary, 1078 (6th Ed. 1990).

13. Pursuant to the plain language of NRS 649.020(1), Respondent, through its business practices, constitutes a collection agency because it engages "in the collection of or in soliciting or obtaining in any manner the payment of a claim owed or due or asserted to be owed or due to another" by soliciting the right to obtain or receive payments owed to lenders and attempting to obtain such payments from borrowers and obtaining payments which are later forwarded to the lenders. *Exhibits F, G, L, M & N; see White v. Warden, Nevada State Prison,* 96 Nev. 634, 636, 614 P.2d 536 (1980) ("Of course, we recognize that the intent of the legislature is the controlling factor and that, if the statutes under consideration are clear on

1  their face, we cannot go beyond them in determining legislative intent."); *see Brown v. Davis,*
2  1 Nev. 409, 1 (1865) ("The rule is cardinal and universal that if the law is plain and
3  unambiguous, there is no room for construction or interpretation"); *see 1964 Nev. Op. Att'y.*
4  *Gen. No. 189,* p. 1 (concluding, "[i]t is the opinion of this office that a company which indirectly
5  solicits the payment of debts by requesting the debtor to forward payment to the creditor, and
6  uses cards which threaten loss of credit, at the same time collecting a fee from the creditor, is
7  a collection agency within the definition of Nevada Statutes and should therefore be bonded
8  and pay a license fee."); *see 1999 Nev. Op. Att'y. Gen, No. 38,* p. 2-4 (comparing the
9  procedures of lien foreclosures to those of non-judicial foreclosures of deeds of trust and
10 stating, "[s]ince the purpose of the lien foreclosures is to enforce a creditor's rights with
11 respect to a financial obligation that is 'past due,' we believe one exclusively engaged in the
12 processing of such foreclosures is attempting to collect a debt as its 'primary or a secondary
13 object, business or pursuit.'   NRS 649.020(1)."   The opinion concludes, "[s]ince such a
14 company is not exempted from the definition of a collection agency, it must obtain a collection
15 agency license prior to engaging in that activity.").

16      14.   NRS 649.075(1) reads as follows:

18          1. Except as otherwise provided in this section, a person shall not
            conduct within this State a collection agency or engage within this
19          State in the business of collecting claims for others, or of soliciting
            the right to collect or receive payment for another of any claim, or
20          advertise, or solicit, either in print, by letter, in person or otherwise,
            the right to collect or receive payment for another of any claim, or
21          seek to make collection or obtain payment of any claim on behalf
            of another without having first applied for and obtained a license
22          from the Commissioner.
            2. A person is not required to obtain a license if the person holds a
23          certificate of registration as a foreign collection agency issued by
            the Commissioner pursuant to <u>NRS 649.171</u>.
24
25      15.   Respondent violated NRS 649.075 because through its business activities
26 Respondent solicited the right to collect or receive payment of claims for others and sought to
27 obtain payment of claims on behalf of others and obtained payments without having first

28
                                        -8-

1  applied for and obtained a license, or a certificate of registration as a foreign collection

2  agency, from the Commissioner.  NRS 649.075.

3        16. Respondent is conducting a "collection agency," as that term is defined in NRS

4  649.020(1), within the State of Nevada and it is not licensed as a collection agency in the

5  State of Nevada.

6        17. NRS 649.390 states:

7              1.  The Commissioner shall conduct an investigation if he or she
8        receives a verified complaint from any person that sets forth
         reason to believe that an unlicensed person is engaging in an
9        activity for which a license is required pursuant to this chapter.
              2.  If the Commissioner determines that an unlicensed person is
10       engaging in an activity for which a license is required pursuant to
         this chapter, the Commissioner shall issue and serve on the
11       person an order to cease and desist from engaging in the activity
         until such time as the person obtains a license from the
12       Commissioner.
              3.  If a person upon whom an order to cease and desist is served
13       does not comply with the order within 30 days after service, the
         Commissioner shall, after notice and opportunity for a hearing:
14            (a) Impose upon the person an administrative fine of $10,000;
         or
15            (b) Enter into a written consent agreement with the person
16       pursuant to which the person agrees to cease and desist from all
         unlicensed activity in this State relating to the collection of debts,
17       and impose upon the person an administrative fine of not less than
         $5,000 and not more than $10,000.
18       The imposition of an administrative fine pursuant to this subsection
         is a final decision for the purposes of judicial review.
19            ...

20
              5.  A person's liability for an administrative fine is in addition to any
21       other penalty provided in this chapter.

22  By stipulation dated January 14. 2011, the parties agreed to stay the Cease and Desist Order

23  until 30 days after the issuance of this decision. Therefore, a fine cannot be imposed pursuant

24  to NRS 649.390.

25        18. Pursuant to NRS 649.440, the Commissioner can impose administrative fines of not

26  more than $10,000.00 for any violation of this chapter.

27

28
                                       -9-

In addition to any other remedy or penalty, the Commissioner may impose an administrative fine of not more than $10,000 upon a person who:

    1.  Without a license or certificate, conducts any business or activity for which a license or certificate is required pursuant to the provisions of this chapter; or

    2.  Violates any provision of this chapter or any regulation adopted pursuant thereto.

19. A finding that Respondent willfully violated the provisions of Chapter 649 of the NRS is not necessary.

20. Respondent's argument that the Division should treat it similar to another business if there is another business conducting similar activities and the Division did not require that other business to obtain a license is without merit.  In Nevada, administrative decisions are not *stare decisis* and do not constitute binding precedent.  See *Gray Line Tours of Southern Nevada* v. *Public Service* Commission *of Nevada*, 97 Nev. 200, 203 (1981) (providing, ·administrative agencies are not bound by the doctrine of stare decisis").  Consequently, the Division applies the law to the facts of each circumstance on a case-by-case basis.

21. Respondent also argues that the Deed of Trust documents constitute a three party agreement and that Respondent simply agrees to perform activities that are required by Ch. 107 of the NRS.  To the extent, Respondent is attempting to argue that the statutes contained in Ch. 107 of the NRS are the specific statutes at issue and that they should control with regard to whether Respondent needs a collection license, Ch. 107 does not address whether a collection agency license is needed.  In addition, NRS 107.050 states, "[n]othing in NRS 107.030 and 107.040 shall prevent the parties to any transfer in trust from entering into other, different or additional covenants or agreements than those set out in NRS 107.030."  In this case, the parties apparently entered into additional agreements regarding the attempting to obtain and obtaining of payments by Respondent.  Moreover, with regard to what business activities require a collection agency license, NRS 649.020 is the specific statute and it does not contain an exemption for Respondents.

1    22. Respondent also argues that NRS 80.015 exhibits the Nevada Legislature's
2    recognition that foreclosing pursuant to a deed of trust is a different activity than debt
3    collection. Respondent points out that the statute excludes the enforcement of mortgages and
4    security interests from the definition of doing business in Nevada. Notably, NRS 80.015(4)(b)
5    states that such an exclusion "does not affect the applicability of any other provision of law
6    with respect to the person and may not be offered as a defense or introduced in evidence in
7    any civil action, criminal action, administrative proceeding or regulatory proceeding to prove
8    that the person is not doing business in this State." Consequently, NRS 80.015 does not
9    prohibit the enforcement of NRS 649.020 nor does it exempt Respondent from the
10   requirement to be licensed as a collection agency.

11   23. Respondent cited to and provided several cases which state that non-judicial
12   foreclosure does not constitute debt collection pursuant to the Fair Debt Collection Practices
13   Act (hereinafter "FDCPA"). The FDCPA defines "debt collector" as, "any person who uses any
14   instrumentality of interstate commerce or the mails in any business the principal purpose of
15   which is the collection of any debts, or who regularly collects or attempts to collect, directly or
16   indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6).
17   Whereas, NRS 649.020(1) states, "all persons engaging, directly or indirectly, and as a
18   primary or a secondary object, business or pursuit, in the collection of or in soliciting or
19   obtaining in any manner the payment of a claim owed or due or asserted to be owed or due to
20   another." The statutes are considerably different. The FDCPA looks for the collection of
21   debts to be the primary purpose of a business with the collection of debts, or attempted
22   collection, being conducted regularly. NRS 649.020(1) is not limited to the collection of debts
23   being a primary purpose and also includes the soliciting of payments and obtaining in any
24   manner the payment of a claim. Thus, as set forth above, the plain language of NRS
25   649.020(1) imposes upon Respondent the requirement to become licensed as a collection
26   agency.

27
28

1    24. The FDCPA states, "[t]his title does not annul, alter, or affect, or exempt any person

2 subject to the provisions of this title from complying with the laws of any State . . .." 15 U.S.C.

3 1692n.   Contrary to Respondent's assertions, the FDCPA does not prohibit Nevada from

4 requiring Respondent to be licensed as a collection agency. *Id.*

5    25. The Legislature is presumed to have knowledge of existing statutes. *International*

6 *Game Technology, Inc. v. The Second Judicial District Court of the State of Nevada*, 122 Nev.

7 132, 154 (2006).  Thus, it is presumed that the legislature had knowledge of NRS 649.020 and

8 that the statute excludes certain business activities from the requirement of obtaining a license

9 as a collection agency. *Id.*; *see* NRS 649.020.  In fact, NRS 649.020(2) enumerates seven (7)

10 exceptions to the licensing requirement.   The Legislature did not amend NRS 649.020 to

11 include an exemption for the activities conducted by Respondent in connection with its non-

12 judicial foreclosure services.  Consequently, even if it could be argued that NRS 649.020 is

13 ambiguous, construing the statue according to principles of statutory construction we come to

14 the same conclusion that the business activities of Respondent are not exempt from the

15 licensing requirement. *State ex. rel. Nev. Tax Comm'n v. Boerlin*, 38 Nev. 39, 45, 144 P.738

16 (1914) ("In the construction of a statute in which certain things are enumerated, other things

17 are to be excluded."); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005)

18 ("The doctrine of *expressio unius est exclusio alterius* 'as applied to statutory interpretation

19 creates a presumption that when a statute designates certain persons, things, or manners of

20 operation, all omissions should be understood as exclusions'").

21    26. Moreover, according to legislative history, conducting foreclosures constitutes debt

22 collection. *See Minutes of the Subcommittee of the Senate Committee on Commerce and*

23 *Labor, 73rd Session, April 12, 2005, p. 3* (stating, "if you have a full-service management

24 company, and some of the large ones are full-service, and you are offering to file liens, record

25 notices of default and go through the foreclosure process, . . . you have to meet the same

26 licensing and the same qualifications as the actual foreclosure services that are out there");

27 *see Minutes of the Subcommittee of the Senate Committee on Commerce and Labor, 73rd*

28

-12-

*Session, April 12, 2005, p. 4* (discussing the proposed 649.020(3), "if you are a management company or . . . community manager who is going to be collecting . . ., then you are going to be governed under NRS 649, which governs other foreclosure services . . .").

27. Any Conclusion of Law hereinafter construed to constitute a Finding of Fact is hereby adopted as such to the same extent as if originally so denominated.

-13-

1

<u>DECISION</u>

2      IT IS HEREBY ORDERED that the Division's cease and desist order is affirmed and

3  Respondent shall cease and desist from conducting its non-judicial foreclosure services, i.e.

4  soliciting the right to receive payments owed to others and collecting, soliciting or obtaining in

5  any manner payments of claims owed to others, until such time that Respondent becomes

6  licensed with the Division as a collection agency.

7      DATED this 14th day of February, 2012.

8

9                  STATE OF NEVADA
                   DEPARTMENT OF BUSINESS AND INDUSTRY
10                 FINANCIAL INSTITUTIONS DIVISION

11

12             By: _____

13                 GEORGE E. BURNS
                   COMMISSIONER
14                 (HEARING OFFICER)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-14-

1

2

## JUDICIAL REVIEW RIGHTS

3

You may file a petition seeking judicial review of this decision pursuant to NRS

4

233B.130. Any such petition must be filed in accordance with NRS 233B.130, *et seq.*

5

The above information is provided to you as a matter of courtesy only.  You, or your

6

counsel, should ascertain with more particularity any statutory requirements pertinent to your

7

rights to seek judicial review.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-15-

1

2                                    CERTIFICATE OF SERVICE

3          I hereby certify that I have this day served the foregoing Findings of Fact, Conclusions
   of Law and Final Decision in the matter of Quality Loan Services Corporation upon all parties
4  of record in this proceeding as follows:

5  By mailing a copy thereof via certified mail, properly addressed, with postage prepaid to:

6          Paul E. Larsen, Esq.
7          Lionel Sawyer & Collins
           1700 Bank of America Plaza
8          300 S. 4th Street
           Las Vegas, NV 89101
9
           Kristin Schuller-Hintz
10         McCarthy & Holthus, LLP
11         9510 W. Sahara Ave., #110
           Las Vegas, NV 89117
12
   By electronic mail to:
13
14         Paul E. Larsen, Esq. at plarsen@LionelSawyer.com.

15         Kristin A. Schuler-Hintz, Esq. at KHintz@mccarthyholthus.com.

16         Daniel D. Ebihara, Deputy Attorney General at debihara@ag.nv.gov.

17  By interoffice mail to:

18         Daniel D. Ebihara, Deputy Attorney General

19  Dated at Las Vegas, Nevada, this 14th day of February 2012.

20

21

22  _____
23  Employee of the Financial Institutions Division
    State of Nevada
24

25

26

27

28
                                            -16-