**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JEFFREY BENKO; CAMILO MARTINEZ; ANA MARTINEZ; FRANK SCINTA; JACQUELINE SCINTA; SUSAN HJORTH; SANDRA KUHN; JESUS GOMEZ; SILVIA GOMEZ; DONNA HERRERA; ANTOINETTE GILL; JESSE HENNIGAN; KIM MOORE; THOMAS MOORE, Nevada residents; RAYMOND SANSOTA; FRANCINE SANSOTA, Ohio residents, *Plaintiffs-Appellants*, v. QUALITY LOAN SERVICE CORPORATION, a California corporation; MTC FINANCIAL, INC., DBA Trustee Corps.; MERIDIAN FORECLOSURE SERVICE, DBA Meridian Trust Deed Service, DBA MTDS, Inc.; NATIONAL DEFAULT SERVICING CORPORATION; CALIFORNIA RECONVEYANCE COMPANY, *Defendants-Appellees.* | No. 13-15185 D.C. No. 2:12-CV-0024-MMD-GWF OPINION |

Appeal from the United States District Court
for the District of Nevada
Miranda Du, District Judge, Presiding

2          BENKO V. QUALITY LOAN SERVICE CORP.

Argued and Submitted
March 13, 2015—San Francisco, California

Filed June 18, 2015

Before: J. Clifford Wallace, Milan D. Smith, Jr.,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Dissent by Judge Wallace

## SUMMARY[*]

### Jurisdiction / Class Action Fairness Act

The panel reversed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of a class action, vacated the district court's judgment, and remanded with instructions to the district court to remand the case to Nevada state court because there was no federal jurisdiction under the Class Action Fairness Act.

The panel held that the court lacked jurisdiction because Meridian Foreclosure Services, a Nevada corporation, was a "significant" defendant for purposes of CAFA's local controversy exception, 28 U.S.C. § 1332(d)(4)(A). The panel concluded that the plaintiffs met their burden to show that this case qualified for the local controversy exception where: a class of exclusively Nevada plaintiffs filed suit against six

_____

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

BENKO V. QUALITY LOAN SERVICE CORP.        3

defendants, one of which was Nevada domiciled; the alleged misconduct took place exclusively in the state of Nevada; and the one Nevada domiciled defendant was allegedly responsible for between 15-20% of the wrongs alleged by the entire class.

The panel held that the district court abused its discretion in denying the plaintiffs leave to amend their complaint after removal to federal court, and erred in not considering the plaintiffs' second amended complaint for purposes of analyzing jurisdiction under CAFA.

Judge Wallace dissented from the majority's holding that plaintiffs should be permitted to amend the complaint after removal, and the majority's conclusion that the district court abused its discretion in denying plaintiffs leave to file the second amended complaint. Judge Wallace would hold that the district court, after properly limiting itself to considering only the allegations in the first amended complaint, did not err in concluding that plaintiffs failed to satisfy the requirements of CAFA's local controversy exception.

---

## COUNSEL

Nicholas A. Boylan (argued), Law Office of Nicholas A. Boylan, San Diego, California, for Plaintiffs-Appellants

Lawrence G. Scarborough (argued), Jessica R. Maziarz, and Brian Cave LLP, Phoenix, Arizona; Kent F. Larsen and Katie M. Weber, Smith Larsen & Wixom, Las Vegas, Nevada, for Defendant-Appellee California Reconveyance Company.

(4 of 31)

Case 2:12-cv-00224-MMD-GWF  Document 115  Filed 06/18/15  Page 4 of 31
Case: 13-16185, 06/18/2015, ID: 9576871, DktEntry: 65-1, Page 4 of 31

4          BENKO V. QUALITY LOAN SERVICE CORP.

Kristin A. Schuler-Hintz (argued) and Melissa Robbins
Coutts, McCarthy & Holthus LLP, Las Vegas, Nevada, for
Defendant-Appellee Quality Loan Service Corporation.

Richard J. Reynolds (argued) and Fabio R. Cabezas, Burke,
Williams & Sorensen LLP, Santa Ana, California; Michael
Sullivan, Robison, Belaustegui, Sharp & Low, Reno, Nevada,
for Defendant-Appellee MTC Financial Inc.

Michael R. Brooks, I-Che Lai, and Arlene Casillas, Brooks
Bauer LLP, Las Vegas, Nevada, for Defendant-Appellee
Meridian Foreclosure Service

Gregory L. Wilde and Kevin S. Soderstrom, Tiffany & Bosco
P.A., Las Vegas, Nevada, for Defendant-Appellee National
Default Servicing Corporation.

---

## OPINION

M. SMITH, Circuit Judge:

In this diversity class action, Jeffrey Benko and several
others (collectively the Plaintiffs) sued the Defendant
companies, alleging that they engaged in illegal debt
collection practices in the course of carrying out non-judicial
foreclosures. The Plaintiffs initially filed the action in the
Eighth Judicial Court of the State of Nevada, but the
Defendants removed the action to federal district court under
the Class Action Fairness Act (CAFA), 28 U.S.C. §§ 1332(d),
1453, 1711. The district court held that it had jurisdiction
over the class action, but then dismissed the Plaintiffs' claims
under Federal Rule of Civil Procedure 12(b)(6).

(5 of 31)

Case 2:12-cv-00224-MMD-GWF Document 115 Filed 06/18/15 Page 5 of 31
Case: 13-16195, 06/18/2015, ID: 9578071, DktEntry: 63-1, Page 5 of 20

BENKO V. QUALITY LOAN SERVICE CORP.          5

We reverse the district court, vacate the district court's judgment, and remand with instructions to the district court to remand this case to the Eighth Judicial District Court of Nevada for further proceedings. Because Meridian Foreclosure Services (Meridian), a Nevada corporation, is a "significant" defendant for purposes of CAFA's local controversy exception, 28 U.S.C. § 1332(d)(4)(A), we lack jurisdiction over this action. The district court abused its discretion in denying the Plaintiffs leave to amend their complaint and erred in not considering the Plaintiffs' Second Amended Complaint (SAC) for purposes of analyzing jurisdiction under CAFA.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Factual Background

The Plaintiff class members took out loans against Nevada real properties, and later defaulted on those loans. The Defendants, who served as trustees on the deeds of trust that were foreclosed, are Quality Loan Services Corporation, Appleton Properties, MTC Financial, Meridian, National Default Servicing Corporation, and California Reconveyance Company. Meridian is the only Defendant domiciled in Nevada.

To foreclose on real property secured debt by private sale, the Defendants were required by Nevada law to send the Plaintiffs a "Notice of Default and Election to Sell Under Deed of Trust." Among other things, the notices stated that a "breach of obligations . . . has occurred" and made a "demand for sale" as a result of the default.

(6 of 31)

Case 2:12-cv-00224-MMD-GWF  Document 115  Filed 06/18/15  Page 6 of 31
Case: 13-16185, 06/18/2015, ID: 9576871, DktEntry: 93-1, Page 6 of 20

6          BENKO V. QUALITY LOAN SERVICE CORP.

In their SAC, the Plaintiffs alleged that, by virtue of foreclosing on Nevada real property utilizing a private sale, the Defendants engaged in "claim collection" under Nevada Revised Statutes (NRS) Section 649. The Plaintiffs argue that, since Nevada law requires that trustees be licensed, the Defendants' failure to register as "collection agencies," as defined in NRS Section 649.020, constituted a deceptive trade practice. The Plaintiffs also claim that the Defendants engaged in unjust enrichment, trespass, quiet title, and elder abuse.

## II. Prior Proceedings

On December 19, 2011, the Plaintiffs filed this class action in the Eighth Judicial District Court of the State of Nevada. Shortly thereafter, Defendant Meridian removed the action to federal district court under CAFA. On April 12, 2012, the Plaintiffs attempted to amend their First Amended Complaint (FAC), adding information concerning the claims asserted against Meridian, an in-state Defendant.

The district court held that it had jurisdiction over the class action, but ultimately dismissed the Plaintiffs' FAC under Rule 12(b)(6) for failure to state a claim. The court held that the SAC did not alter the core allegations made in the FAC and denied the Plaintiffs leave to amend, holding that the amendments were futile.

This appeal followed.

## ANALYSIS

In this case, we consider the circumstances under which the CAFA "local controversy exception" requires remand to

(7 of 31)

Case 2:12-cv-00224-MMD-GWF  Document 115  Filed 06/18/15  Page 7 of 31
Case: 13-16234, 06/26/2015, ID: 9579807, DktEntry: 99-1, Page 7 of 20

an originating state court. This is an issue that our circuit has rarely confronted. *See Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013); *Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1020 (9th Cir. 2011). Our sister circuits, likewise, have considered this issue on only a few occasions. *See, e.g.*, *Opelousas Gen. Hosp. Auth. v. FairPay Solutions, Inc.*, 655 F.3d 358, 363 (5th Cir. 2011); *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 153 (3d Cir. 2009); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006).

As a threshold matter, CAFA applies to any class action where the aggregate number of members of a proposed plaintiff class is 100 or more. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020 (9th Cir. 2007). CAFA also requires the removing party to show that "(1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant." *Id.* at 1020–21.

These three conditions are clearly met in the present case. The alleged class includes all Nevada residents who were purportedly subject to debt collection activities by the Defendant companies, an aggregate number which is likely in the thousands. Moreover, the claims alleged by the Plaintiffs involve substantial monetary relief, which exceeds the $5,000,000 requirement. For instance, the SAC states that the claims made against Meridian are worth between $5,000,000 and $8,000,000. Finally, there is diversity of citizenship between class members, who are all Nevada citizens, and the Defendants, only one of which is domiciled in Nevada.

Case 2:12-cv-00224-MMD-GWF   Document 115   Filed 06/18/15   Page 8 of 31
Case: 13-16414, 06/18/2015, ID: 9576871, DktEntry: 63-1, Page 8 of 20

(8 of 31)

8        BENKO V. QUALITY LOAN SERVICE CORP.

CAFA, however, requires that federal courts remand removed CAFA cases to the originating state court when the following three conditions are met:

> (I) "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed";
>
> (II) at least 1 defendant is a defendant–(aa) from whom significant relief is sought by members of the plaintiff class; (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (cc) who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed.

28 U.S.C. § 1332(d)(4)(A)(i).

The plaintiff bears the burden of showing that this provision, known as the "local controversy exception," applies to the facts of a given case. *See Mondragon*, 736 F.3d at 883; *Coleman*, 631 F.3d at 1013; *Serrano*, 478 F.3d at 1024.

We recognize that the "local controversy exception" is a narrow one, particularly in light of the purposes of CAFA. The Eleventh Circuit found, and we agree, that "CAFA's language favors federal jurisdiction over class actions, and

CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one." *Evans*, 449 F.3d at 1163. Moreover, the Report issued by the Senate Judiciary Committee in connection with the passage of CAFA recognized, "that abuses are undermining the rights of both plaintiffs and defendants. One key reason for these problems is that most class actions are currently adjudicated in state courts, where the governing rules are applied inconsistently (frequently in a manner that contravenes basic fairness and due process considerations) and where there is often inadequate supervision over litigation procedures and proposed settlements." S. Rep. No. 109-14, 3, 2005 U.S. Code Cong. & Admin. News 3, 5.

## A. Which Allegations Should be Considered?

We begin our analysis by determining at what point in the litigation the court should ascertain whether Meridian is "significant" within the meaning of 28 U.S.C. § 1332(d)(4)(A)(i)(II). The Plaintiffs, who attempted to amend their complaint after removal to federal court, contend that we should focus on the allegations in their SAC. The district court denied the Plaintiffs leave to amend the FAC because it concluded that the amendments were futile. We review the district court's decision for an abuse of discretion. *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).

The Defendants urge us to follow the reasoning in *Sparta Surgical Corporation v. NASD*, where we concluded that "jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments." 159 F.3d 1209, 1213 (9th Cir. 1998). Under *Sparta Surgical Corporation*, we would consider only the

allegations in the FAC, which was the operative complaint at
the time the Defendants removed this class action to federal
court.

We conclude that *Sparta Surgical Corporation* does not
apply in the present circumstances and that the district court
abused its discretion in denying the Plaintiffs leave to amend.
We, therefore, analyze Plaintiffs' SAC to determine the
applicability of the local controversy exception. Where a
defendant removes a case to federal court under CAFA, and
the plaintiffs amend the complaint to explain the nature of the
action for purposes of our jurisdictional analysis, we may
consider the amended complaint to determine whether
remand to the state court is appropriate. Unlike the plaintiff
in *Sparta Surgical Corporation*, the Plaintiffs here did not
amend the FAC to eliminate a federal question so as to avoid
federal jurisdiction. Rather, the Plaintiffs amended the FAC
to elaborate on estimates of the percentage of total claims
asserted against Meridian, an in-state Defendant, and the
dollar value of those claims. The information added by the
Plaintiffs is directly related to CAFA's local controversy
exception. Because no countervailing considerations—such
as undue delay, prejudice, bad faith, or futility—counseled
against amendment, the district court abused its discretion by
denying Plaintiffs leave to amend here. *See Sonoma Cnty.
Ass'n of Retired Employees v. Sonoma Cnty.*, 708 F.3d 1109,
1117 (9th Cir. 2013) ("In general, a court should liberally
allow a party to amend its pleading."); *Bowles v. Reade*,
198 F.3d 752, 758–59 (9th Cir. 1999).

(11 of 31)

Case 2:12-cv-00224-MMD-GWF   Document 115   Filed 06/18/15   Page 11 of 31
Case: 13-16213, 06/18/2015, ID: 9579071, DktEntry: 65-1, Page 11 of 20

BENKO V. QUALITY LOAN SERVICE CORP.        11

Our holding, that plaintiffs should be permitted to amend a complaint after removal to clarify issues pertaining to federal jurisdiction under CAFA, is necessary in light of *Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011). Under *Coleman*, we may analyze only the allegations in the complaint to determine whether plaintiffs seek "significant relief" from an in-state defendant and whether the in-state defendant's "alleged conduct forms a significant basis for the claims asserted." *Id*. at 1015. As a result, there is a possibility that a class action may be removed to federal court, with a complaint originally drafted for state court. The state court complaint, in turn, may not address CAFA-specific issues, such as the local controversy exception. By amending their complaint in these circumstances, plaintiffs can provide a federal court with the information required to determine whether a suit is within the court's jurisdiction under CAFA.

**B. Local Controversy Exception**

### 1. Citizenship of Plaintiffs and Location of Alleged Injuries

To qualify for the "local controversy exception," the Plaintiffs must first show that greater than two-thirds of the proposed class members are Nevada citizens. 28 U.S.C. § 1332(d)(4)(A)(i)(I). That requirement is easily met here because all the Plaintiffs are Nevada citizens. The Plaintiffs must also demonstrate that the principal injuries they allege occurred in the state of Nevada, 28 U.S.C. § 1332(d)(4)(A)(i)(III), a fact that the Defendants concede.

(12 of 31)

Case 2:12-cv-00224-MMD-GWF  Document 115  Filed 06/18/15  Page 12 of 31
Case: 13-16245, 06/18/2015, ID: 9576071, DktEntry: 63-1, Page 12 of 20

12        BENKO V. QUALITY LOAN SERVICE CORP.

### 2. Significant Defendant Test

We next consider whether Meridian's conduct constitutes "a significant basis" for the Plaintiffs' claims and whether the Plaintiffs seek "significant relief" from Meridian. 28 U.S.C. § 1332(d)(4)(A)(i)(II). When construing the meaning of a statute, we begin with the language of that statute. The Supreme Court has stated that "a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). If the statutory text is ambiguous, we employ other tools, such as legislative history, to construe the meaning of ambiguous terms. *See United States v. Gonzales*, 520 U.S. 1, 6 (1997).

"When a word is not defined by statute, [the Supreme Court] normally construe[s] it in accord with its ordinary or natural meaning," which can often be discerned by reference to the dictionary definition of that word. *Smith v. United States*, 508 U.S. 223, 228 (1993). Several dictionaries offer complementary definitions of "significant," with each suggesting that the word essentially means "important" or "characterized by a large amount or quantity." For example, Black's Law Dictionary states that "significant" means "[o]f special importance; momentous, as distinguished from insignificant." Black's Law Dictionary (10th ed. 2014). The American Heritage Dictionary defines the word as "having or expressing meaning; meaningful," "having or likely to have a major effect; important," and "fairly large in amount or quantity." American Heritage Dictionary 1619 (4th ed. 2000). We assume that, in CAFA, the word "significant" is used consistently and with the same meaning, as a modifier of "basis for the claims" and "relief." *See Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932) ("[T]here is a

(13 of 31)

Case 2:12-cv-00224-MMD-GWF  Document 115  Filed 06/18/15  Page 13 of 31
Case: 13-16245  06/18/2015  ID: 9579071  DktEntry: 63-1  Page: 13 of 31

BENKO V. QUALITY LOAN SERVICE CORP.        13

natural presumption that identical words used in different parts of the same act are intended to have the same meaning.").

To determine if the "basis for the claims" against Meridian is important or fairly large in amount or quantity, we compare the allegations against Meridian to the allegations made against the other Defendants. CAFA clarifies that we should look at a defendant's "basis" in the context of the overall "claims asserted." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb). This comparative approach is consistent with the reasoning of the Third Circuit in *Kaufman*, 561 F.3d at 156 ("Whether [the significant basis] condition is met requires a substantive analysis comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants."). *See also Opelousas*, 655 F.3d at 363 (requiring "more detailed allegations or extrinsic evidence detailing the local defendant's conduct in relation to the out-of-state defendants").

Meridian is one of just six Defendants referred to in the SAC. In terms of the overall class, the Plaintiffs allege that "Meridian conducted illegal debt collection agency activities with respect to thousands of files each year," and that Meridian's activities constituted between 15 to 20% of the total debt collection activities of all the Defendants. In *Evans*, the Eleventh Circuit reasoned that the "significant basis" provision was not satisfied because the plaintiffs had not shown that "a significant number or percentage of putative class members may have claims against [a local defendant]." *Evans*, 449 F.3d at 1167. By contrast, Meridian foreclosed between 15 to 20% of the homes of all Plaintiffs in the class. Several Plaintiffs then have colorable claims against Meridian.

(14 of 31)

Case 2:12-cv-00224-MMD-GWF  Document 115  Filed 06/18/15  Page 14 of 31
Case: 13-16245, 06/18/2015, ID: 9576071, DktEntry: 63-1, Page 14 of 20

14        BENKO V. QUALITY LOAN SERVICE CORP.

To determine if the Plaintiffs claim "significant relief"
from Meridian, we look to the remedies requested by the
Plaintiffs in the SAC. *See Coleman*, 631 F.3d at 1020. The
Plaintiffs claim general damages of $10,000 from Meridian,
and punitive damages as a result of deceptive trade practices
and fraud. The Plaintiffs estimate that the total damages
recoverable from Meridian are between $5,000,000 and
$8,000,000. Meridian also concedes that the Plaintiffs seek
equitable relief, which would significantly increase the
overall value of the judgment against Meridian. *Cf. id.*
("Further, the complaint seeks injunctive relief against [the
local defendant]. There is nothing in the complaint to suggest
either that the injunctive relief sought is itself insignificant,
or that [the local defendant] would be incapable of complying
with an injunction."). The amounts sought are sufficient to
show that the Plaintiffs claim "significant relief" from a local
defendant.

Our analysis is further buttressed by the Senate Judiciary
Committee's findings pertaining to the "local controversy
exception." The Committee Report stated that "[t]his
provision is intended to respond to concerns that class actions
with a truly local focus should not be moved to federal court
under this legislation because state courts have a strong
interest in adjudicating such disputes. . . . [A] federal court
should bear in mind that the purpose of each of these criteria
is to identify a truly local controversy–a controversy that
uniquely affects a particular locality to the exclusion of all
others." S. Rep. No. 109-14, 39, 2005 U.S. Code Cong. &
Admin. News 3, 38.

In this case, a class of exclusively Nevada Plaintiffs has
filed suit against six Defendants, one of which is Nevada
domiciled. The alleged misconduct took place exclusively in

(15 of 31)

Case 2:12-cv-00224-MMD-GWF Document 115 Filed 06/18/15 Page 15 of 31
Case: 13-16225, 06/18/2015, ID: 9578071, DktEntry: 69-1, Page 15 of 20

the state of Nevada. The one Nevada domiciled Defendant was allegedly responsible for between 15–20% of the wrongs alleged by the entire class. The Plaintiffs have met their burden to show that this case qualifies for the "local controversy exception."

We reverse the district court, vacate the district court's judgment, and remand with instructions to remand the case to the Eighth Judicial District Court of the State of Nevada, for further proceedings. *See Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009).

## REVERSED AND REMANDED WITH INSTRUCTIONS

---

WALLACE, Circuit Judge, dissenting:

I dissent from the majority's holding in Part A that "plaintiffs should be permitted to amend a complaint after removal to clarify issues pertaining to federal jurisdiction under CAFA." Opinion p. 11. In considering whether subsections (aa) and (bb) of CAFA's local controversy exception are satisfied, we should not depart from the bright-line rule that "jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments." *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213 (9th Cir. 1998); *see also Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939). The majority errs in carving out an inappropriate exception to that rule, based solely on non-binding dicta from *Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010, 1020–21 (9th Cir. 2011), which merely speculates that it "may" be wise, in the district court's

16          BENKO V. QUALITY LOAN SERVICE CORP.

discretion, to "permit the plaintiff to file an amendment to the
complaint that addresses any relevant CAFA criteria." The
majority's rule departs from controlling precedent and will
frustrate Congress's intent that the local controversy
exception be a narrow one, carefully drafted to ensure that it
does not become a jurisdictional loophole. *See* Senate Report
on CAFA, S. Rep. 109-14, at 39.

I also dissent from the majority's conclusion in Part B
that the district court abused its discretion in denying
Plaintiffs leave to file the SAC. The district court did not
abuse its discretion because its denial comports with the
bright-line jurisdictional rule stated above. Additionally, we
have consistently held that a district court does not abuse its
discretion under Fed. R. Civ. P. 15 by denying proposed post-
removal amendments that would destroy federal jurisdiction,
as the proposed SAC does here.

Finally, even if the district court had abused its discretion
in denying leave to file the SAC (which it did not), the
majority should have remanded to the district court with
orders to grant Plaintiffs leave to amend, and then to
decide—in the first instance, once the SAC becomes
operative—whether the allegations in the SAC satisfy the
local controversy exception.

I.

The majority errs in departing from the clear rule that
certain jurisdictional questions under CAFA are determined
based on the pleadings operative at the time of removal,
and are unaffected by later developments, including—
especially—artful amending of the complaint. *See United
Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus.*

(17 of 31)

Case 2:12-cv-00224-MMD-GWF Document 115 Filed 06/18/15 Page 17 of 31
Case: 13-16245, 06/18/2015, ID: 9570071, DktEntry: 65-1, Page 17 of 20

*& Serv. Workers Int'l Union v. Shell Oil Co.*, 602 F.3d 1087, 1091–92 (9th Cir. 2010). I fully agree with the Seventh Circuit's observations that it is a "well-established general rule . . . that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction," and that "removal cases present concerns about forum manipulation that counsel against allowing a plaintiff's post-removal amendments to affect jurisdiction." *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380–81 (7th Cir. 2010). I also agree with the Fifth Circuit's maxim that "[a]llowing [plaintiffs] to avoid federal jurisdiction through a post-removal amendment would turn the policy underlying CAFA on its head." *Cedar Lodge Plantation, LLC v. CSHV Fairway View I, LLC*, 768 F.3d 425, 429 (5th Cir. 2014).

In *Doyle v. OneWest Bank, FSB*, 764 F.3d 1097 (9th Cir. 2014), for example, our court concluded that the district court erred by considering an amended complaint that was filed post-removal to determine the citizenship of the plaintiff class. *Id.* at 1098. We specifically held that "[f]or the purpose of considering the applicability of the exceptions to CAFA jurisdiction, the District Court should have determined the citizenship of the proposed plaintiff class based on Doyle's complaint 'as of the date the case became removable.'" *Id.*, quoting *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013). This was not dicta, as relied on by the majority, but a holding of our court which should govern this appeal.

Similarly, in *United Steel*, a putative class action was properly removed under CAFA but, after removal, class certification was denied. Our court held that remand to state court was improper—despite the failure of class certification—because "post-filing developments do not

(18 of 31)

Case 2:12-cv-00224-MMD-GWF   Document 115   Filed 06/18/15   Page 18 of 31
Case: 13-16245, 06/28/2015, ID: 9570071, DktEntry: 69-1, Page 18 of 20

18          BENKO V. QUALITY LOAN SERVICE CORP.

defeat [CAFA] jurisdiction if the jurisdiction was properly
invoked [based on the pleadings] at the time of filing." *United
Steel*, 602 F.3d at 1091–92. This, too, was a prior holding of
our court.

Nevertheless, the majority holds that district courts *must*
allow plaintiffs to amend after removal if their complaint, as
originally filed in state court, fails to address the "significant
basis" and "significant relief" elements of CAFA's local
controversy exception. Opinion p. 11. Recognizing that
allowing such a post-removal amendment is a clear departure
from *Sparta Surgical*'s long-standing rule, the majority states
that its conclusion "is *necessary* in light of *Coleman*."
Opinion p.11. Far from it. The passage the majority cites
from *Coleman* is pure dicta. And it must be rejected because
it conflicts with the Supreme Court's rule in *Pullman Co.* as
well as this court's holding in *United Steel* and other cases
cited above.

A.

Determining whether the local controversy exception
applies should be a quick and simple process for district
courts. *See Coleman*, 631 F.3d at 1016 ("Congress was
particularly concerned that subject matter jurisdiction
determinations be made quickly under CAFA"). District
judges should simply look at the pleadings "as of the date the
case became removable," *Doyle*, 764 F.3d at 1098, and
decide whether subsections (aa) and (bb) of the local
controversy exception are satisfied. This is because, as a
textual matter, CAFA's local controversy exception applies
to the district court's jurisdiction "over a class action."
28 U.S.C. § 1332(d)(4)(A)(I). The term "class action," in
turn, refers to the "civil action *filed*." *Id.* § 1332(d)(1)(B)

Case 2:12-cv-00224-MMD-GWF   Document 115   Filed 06/18/15   Page 19 of 31
Case: 13-16225, 06/18/2015, ID: 9576077, DktEntry: 65-1, Page 19 of 20

(19 of 31)

BENKO V. QUALITY LOAN SERVICE CORP.        19

(emphasis added). Thus, when Congress said that district
courts are to decline to entertain jurisdiction over certain
"class actions," it meant that the "courts are to look at the
action when it was *filed* in order to determine whether the
conditions of abstention are present." *Cedar Lodge*, 768 F.3d
at 428 (emphasis added); *see also Doyle*, 764 F.3d at 1098
("For the purpose of considering the applicability of the
exceptions to CAFA jurisdiction, the District Court should"
look to the "complaint as of the date the case became
removable" (internal quotation marks omitted)). As a result,
if the district judge cannot discern whether the local
controversy conditions are present on the face of the
pleadings at the time of removal, the judge should conclude
that the plaintiffs have failed to carry their burden to show
that the local controversy exception applies. *See Mondragon*,
736 F.3d at 883.

   This procedure is compelled by the critical difference
between a federal court's duty to find jurisdictional *facts* and
its duty to identify and assess jurisdictional *allegations*. As
*Coleman* explained, "some questions of subject matter
jurisdiction are questions of fact, the determination of which
may depend on evidence."   631 F.3d at 1016 (listing, for
example, a defendant's citizenship or the amount in
controversy).  These jurisdictional facts, which exist
independent of the complaint, may require evidentiary
clarification if the pleadings themselves are insufficient.

   Other questions of subject matter jurisdiction, however,
including those at issue here, simply ask a court to identify
what the plaintiff has *alleged*, and then to assess whether
those allegations meet a jurisdictional standard. *Id.* (CAFA's
"use of the words 'sought' and 'alleged,'" in subsections (aa)
and (bb) indicates "that the district court is to look to the

(20 of 31)

Case 2:12-cv-00224-MMD-GWF   Document 115   Filed 06/18/15   Page 20 of 31
Case: 13-16245   06/28/2015   ID: 9579687   DktEntry: 69-1   Page: 20 of 26

20          BENKO V. QUALITY LOAN SERVICE CORP.

complaint rather than to extrinsic evidence"). Identifying
what a plaintiff has *alleged* requires no clarification: the
complaint says what it says. For this reason, having a fixed
point in time at which we assess the pleadings is essential.
The Supreme Court has so recognized. *See Pullman Co.*,
305 U.S. at 537 (A post-removal "second amended complaint
should not have been considered in determining the right to
remove, which . . . was to be determined according to the
plaintiffs' pleading at the time of the petition for removal").
If we allow plaintiffs to amend these particular jurisdictional
allegations post-removal, we are permitting them not merely
to "clarify" the existing jurisdictional nature of the suit, but
rather to *shift* the very ground upon which we make our
jurisdictional determination. This is why post-removal
amendments with respect to subsections (aa) and (bb) are
tantamount to post-filing developments that we uniformly
consider irrelevant to our jurisdictional determination. *See,
e.g.*, *United Steel*, 602 F.3d at 1091.

We generally refuse to consider post-removal
amendments in analyzing our jurisdiction because doing so
would invite plaintiffs to plead artfully, after the fact, what is
necessary to defeat federal jurisdiction. *See In re Burlington*,
606 F.3d at 381 ("[R]emoval cases present concerns about
forum manipulation that counsel against allowing a plaintiff's
post-removal amendments to affect jurisdiction"). The
present case demonstrates the very potential for manipulation
that our rule in *Sparta Surgical* seeks to prevent.

Because applicability of the local controversy exception
depends on a vague definition of the local defendant's
"significance," and because "significant relief" and
"significant basis" can be shown through subjective
estimates, plaintiffs have every incentive to "estimate" in a

(21 of 31)

Case 2:12-cv-00224-MMD-GWF   Document 115   Filed 06/18/15   Page 21 of 31
Case: 13-16245, 06/18/2015, ID: 9578071, DktEntry: 69-1, Page 21 of 29

BENKO V. QUALITY LOAN SERVICE CORP.          21

post-removal amendment as much as necessary to defeat
CAFA jurisdiction. Indeed, Plaintiffs here sought to amend
their complaint after removal to "elaborate on estimates of the
percentage of total claims asserted against" the local
defendant. Opinion p. 10. Predictably, this post-filing
amendment resulted, in the majority's view, in Plaintiffs
successfully defeating CAFA jurisdiction, which was
properly invoked based on the operative complaint at the time
of removal. This manufactured result is clearly at odds with
*Sparta Surgical* and its underlying principles.

B.

The concern the majority shares with *Coleman*'s dicta, of
course, is that it may appear unfair to hold plaintiffs to their
pleadings at the time of removal since their "state court
complaint . . . may not address CAFA-specific issues, such as
the local controversy exception." Opinion p. 11. But that
concern is unfounded, and in any event cannot overcome
CAFA's text or our jurisdictional rules. Congress chose
language clearly indicating that judges are to look at the
action as *filed*—in state court—when making CAFA's
jurisdictional determinations at the time of removal. *See
supra* Part I.A. Our cases consistently follow this principle.
In *Doyle*, for example, we adhered to CAFA's textual
directive that we determine the parties' citizenship "as of the
date of the filing of the complaint or amended complaint."
764 F.3d at 1098. Even in *Coleman* our court recognized that
"under long-established law," in a related jurisdictional
context, "the district court looks to the 'well-pleaded
complaint,' rather than to *any subsequent pleading* or
evidence, in determining whether there is federal question
subject matter jurisdiction." *Coleman*, 631 F.3d at 1016
(emphasis added).

Case: 13-16220, 06/18/2015, ID: 9576071, DktEntry: 65-1, Page 22 of 20

22        BENKO V. QUALITY LOAN SERVICE CORP.

It should not surprise informed plaintiffs, therefore, when we similarly require them to carry their burden to satisfy the "significant relief" and "significant basis" elements of the local controversy exception based upon their pleadings at the time of removal, without regard to "any subsequent pleading." *Id.* If plaintiffs fail to carry that burden, it is no excuse that their "putative class action in state court need[ed] satisfy only the pleading standards of that court." *Coleman*, 631 F.3d at 1020. Perhaps if state pleading standards somehow *prevented* plaintiffs from pleading the necessary facts, a narrow exception might be warranted. But the majority fails to cite a single example of a state court pleading standard that would somehow preclude a plaintiff from clearly alleging in their state-filed complaint that at least one locally domiciled defendant is one "from whom significant relief is sought" and "whose alleged conduct forms a significant basis" for the plaintiffs' claims. 28 U.S.C. § 1332(d)(4)(B)(II)(aa), (bb).

Accordingly, class action plaintiffs and their attorneys who are making CAFA-eligible claims in state court should be held to understand that CAFA removal is always a possibility, and that if they wish to remain in state court, they must plead accordingly. If unsavvy plaintiffs or careless lawyers are caught unawares, that is unfortunate. But such lack of foresight does not justify our departure from the bright-line rule in *Sparta Surgical*. Having bright-line rules on jurisdictional matters permits attorneys to know in advance what action they should take. Federal courts, and litigants who appear before us, are better served by our adherence to bright-line jurisdictional rules, rather than our making excuses for those who have failed to follow our procedural mandates.

(23 of 31)

Case 2:12-cv-00224-MMD-GWF   Document 115   Filed 06/18/15   Page 23 of 31
Case: 13-16245, 06/26/2015, ID: 9576071, DktEntry: 65-1, Page 23 of 31

In sum, jurisdictional determinations that depend exclusively on allegations in the complaint should be determined based on the pleadings operative at the time of removal. *Sparta Surgical*, 159 F.3d at 1213. CAFA contains no indication that Congress wanted us to deviate from this long-standing rule. In fact, the majority's departure from this bright-line rule defeats CAFA's purpose by converting the ostensibly narrow local controversy exception into a tool for plaintiffs to plead out of the very jurisdiction Congress intended CAFA to bestow. Moreover, it will embroil future courts in making fundamentally artificial determinations about whether any particular post-removal amendment is simply "clarifying" or is rather "manipulating." Finally, the majority's departure is in no way "necessary in light of *Coleman*," because the relevant passage from *Coleman* is pure dicta. I therefore dissent from the majority's holding in Part A.

## II.

### A.

I also dissent from the majority's conclusion that the district court abused its discretion in denying Plaintiffs leave to file the SAC. Rule 15 of the Federal Rules of Civil Procedure says that leave to amend "shall be given when justice so requires,'" so we accordingly review a denial of leave to amend "strictly in light of the strong policy permitting amendment." *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). The majority interprets that "strict" standard as *requiring* leave to amend unless "countervailing considerations—such as undue delay, prejudice, bad faith, or futility—counsel[] against amendment." Opinion p. 10. But even under that standard, the proposed amendments in the

(24 of 31)

Case 2:12-cv-00224-MMD-GWF Document 115 Filed 06/18/15 Page 24 of 31
Case: 13-16245, 06/25/2015, ID: 9578071, DktEntry: 65-1, Page 24 of 28

24          BENKO V. QUALITY LOAN SERVICE CORP.

SAC would be "futile" if our case law forbade courts from considering them. Such is the case here.

Our consideration of post-removal amendments is a narrow one-way street in favor of those that *support* rather than *avoid* federal jurisdiction. For example, on rare occasions we have considered post-removal amendments that "solidify" federal jurisdiction, even though removal appeared improper under the operative complaint at the time of removal. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000); *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 949 (9th Cir. 2014). But in doing so, we explained that we would be unwilling to consider a post-removal amendment that sought to *destroy* rather than to "solidify" federal jurisdiction. *Chabner*, 225 F.3d at 1046 n.3, quoting *Sparta Surgical*, 159 F.3d at 1213. In light of this precedent, the district court did not abuse its discretion in denying leave to file the proposed SAC. Plaintiffs' proposed amendments would have been futile because we do not consider post-removal amendments that "would destroy federal jurisdiction after the case has been properly removed." *Chabner*, 225 F.3d at 1046 n.3.

The majority apparently would not apply this principle here, however, because it believes "Plaintiffs . . . did not amend the FAC . . . so as to avoid federal jurisdiction." Opinion p. 10. I disagree—that is exactly what Plaintiffs attempted to do. They sought to amend their complaint to "elaborate on estimates of the percentage of total claims asserted against Meridian . . . and the dollar value of those claims," Opinion p. 10. The clear purpose of those amendments was to add new allegations that would satisfy the local controversy exception and thereby foreclose federal

BENKO V. QUALITY LOAN SERVICE CORP.        25

jurisdiction under CAFA. Indeed, according to the majority, Plaintiffs' amendments accomplished that very intended result. Under these circumstances the district court did not abuse its discretion in denying leave to amend.

### B.

The above reasoning seems clear to me. But even if the district court *had* abused its discretion in denying Plaintiffs leave to file the SAC, the proper course would be for us to remand to the district court, rather than to analyze the SAC's allegations in the first instance.

As an initial matter, although Plaintiffs *moved* to amend their FAC on April 12, 2012, the district court *denied* that motion in all material respects in its omnibus order dated January 2, 2013. Thus, the proposed SAC was not operative, and indeed never became operative. This fact is a problem for the majority's analysis in Part B because *Coleman* requires federal courts "to look to the complaint rather than to extrinsic evidence" in resolving whether a significant local defendant exists. *Coleman*, 631 F.3d at 1016. The "complaint" referenced in *Coleman* clearly refers to an operative complaint, not to a *proposed* one, like the SAC. As a result, until it is properly filed with the district court, the SAC is evidence extrinsic to the operative FAC, which cannot be considered in analyzing subsections (aa) and (bb) of the local controversy exception. *Id.*

If the majority believes the district court's denial was an abuse of discretion, it should not decide whether extrinsic evidence in the proposed SAC satisfies the local controversy exception in the first instance on appeal. Rather, it should remand for the district court to to address that question in the

26      BENKO V. QUALITY LOAN SERVICE CORP.

first instance, once its alleged error has been corrected. *Zivotofsky ex rel. Zivotofsky v. Clinton*, 132 S. Ct. 1421, 1430 (2012) ("[W]hen we reverse on a threshold question, we typically remand for resolution of any claims the lower courts' error prevented them from addressing.").

### III.

In my view, the district court correctly considered only the allegations in the operative complaint at the time of removal—without regard to subsequent attempted amendments—in analyzing whether Plaintiffs met their burden under subsections (aa) and (bb) of the local controversy exception. *See Sparta Surgical*, 159 F.3d at 1213. For this reason alone, I would hold that the district court did not abuse its discretion in denying leave to amend. Alternatively, however, I would hold that district court did not abuse its discretion because Plaintiffs' proposed amendments would have been futile, since we are not permitted to consider those that would have eliminated federal jurisdiction. *See Chabner*, 225 F.3d at 1046 n.3.

I would hold that the district court, after properly limiting itself to considering only the allegations in the FAC, did not err in concluding that Plaintiffs failed to satisfy the requirements of CAFA's local controversy exception. I therefore dissent.

(27 of 31)

Case 2:12-cv-00224-MMD-GWF   Document 115   Filed 06/18/15   Page 27 of 31
Case: 1-9-16469, 06/16/2015, ID: 95768711, DktEntry: 43-1, Page 37 of 31

## United States Court of Appeals for the Ninth Circuit

### Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

## Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36.  Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise.  To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)    A.    Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ► A material point of fact or law was overlooked in the decision;
  - ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B.    Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

(28 of 31)

Case 2:12-cv-00224-MMD-GWF   Document 115   Filed 06/18/15   Page 28 of 31
Case: 1-9-12469, 06/18/2015, ID: 9578841, DktEntry: 43-1, Page 28 of 31

> ►    Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or

> ►    The proceeding involves a question of exceptional importance; or

> ►    The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)**    **Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-2.

**(3)**    **Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4)**    **Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

(29 of 31)

Case 2:12-cv-00224-MMD-GWF Document 115 Filed 06/18/15 Page 29 of 31
Case: 1-9-16245, 06/18/2015, ID: 9570871-5 DktEntry: 49-1, Page 29 of 31

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms*.
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms*.

## Attorneys Fees
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

## Counsel Listing in Published Opinions
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; St. Paul, MN 55164-0526 (Attn: Jean Green, Senior Publications Coordinator);
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

(30 of 31)

Case 2:12-cv-00224-MWF-GW Document 115 Filed 06/18/15 Page 30 of 31
Case: 1-9-162435 06/19/2015 ID: 9570815 DktEntry: 64-2 Page: 30 of

**Form 10. Bill of Costs** ..............................................................................................**(Rev. 12-1-09)**

## United States Court of Appeals for the Ninth Circuit

## BILL OF COSTS

This form is available as a fillable version at:
*http://cdn.ca9.uscourts.gov/datastore/uploads/forms/Form%2010%20-%20Bill%20of%20Costs.pdf*.

<u>*Note:*</u> If you wish to file a bill of costs, it MUST be submitted on this form and filed, with the clerk, with proof of service, within 14 days of the date of entry of judgment, and in accordance with 9th Circuit Rule 39-1. A late bill of costs must be accompanied by a motion showing good cause. Please refer to FRAP 39, 28 U.S.C. § 1920, and 9th Circuit Rule 39-1 when preparing your bill of costs.

[                                    ]  v.  [                                    ]  9th Cir. No. [            ]

The Clerk is requested to tax the following costs against: [                                    ]

_____

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, 9th Cir. R. 39-1 | REQUESTED *(Each Column Must Be Completed)* | | | | ALLOWED *(To Be Completed by the Clerk)* | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST |
| **Excerpt of Record** | [  ] | [  ] | $ [  ] | $ [  ] | [  ] | [  ] | $ [  ] | $ [  ] |
| **Opening Brief** | [  ] | [  ] | $ [  ] | $ [  ] | [  ] | [  ] | $ [  ] | $ [  ] |
| **Answering Brief** | [  ] | [  ] | $ [  ] | $ [  ] | [  ] | [  ] | $ [  ] | $ [  ] |
| **Reply Brief** | [  ] | [  ] | $ [  ] | $ [  ] | [  ] | [  ] | $ [  ] | $ [  ] |
| **Other\*\*** | [  ] | [  ] | $ [  ] | $ [  ] | [  ] | [  ] | $ [  ] | $ [  ] |
| | | | **TOTAL:** | $ [  ] | | | **TOTAL:** | $ [  ] |

\* *Costs per page*: May not exceed .10 or actual cost, whichever is less. 9th Circuit Rule 39-1.

\*\* *Other*: Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to 9th Circuit Rule 39-1. Additional items without such supporting statements will not be considered.

Attorneys' fees **cannot** be requested on this form.

*Continue to next page*

(31 of 31)

Case 2:12-cv-00224-MHD-GWF Document 115 Filed 06/18/15 Page 31 of 31
Case: 13-16245, 06/18/2015, ID: 9578871, DktEntry: 35-1, Page 31 of 5

**Form 10. Bill of Costs -** *Continued*

I, [_____] , swear under penalty of perjury that the services for which costs are taxed were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature [_____]

("s/" plus attorney's name if submitted electronically)

Date [_____]

Name of Counsel: [_____]

Attorney for: [_____]

_____

*(To Be Completed by the Clerk)*

Date [_____]   Costs are taxed in the amount of $ [_____]

Clerk of Court

By: [_____] , Deputy Clerk